Representatives of the **FANENE FAMILY,**
Plaintiffs

v.

**SESERA BROWN, Defendant**

No. 16-1956

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Malaeimi" near Mapusaga]

September 12, 1956

ARTHUR A. MORROW, *Chief Judge;* MALEPEAI, *Associate Judge;* and LETULIGASENOA, *Associate Judge.*

### OPINION AND ORDER DISMISSING PETITION

Heard at Fagatogo on August 28, 1956 before MORROW, *Chief Judge,* and MALEPEAI and LETULIGASENOA, *Associate Judges.*

Afioga, counsel, and Fautua, assistant counsel, for the Representatives of the Fanene Family.

Lagafua, counsel for Sesera Brown.

### OPINION OF THE COURT

MORROW, *Chief Judge.*

Nineteen members of the Fanene Family of Nuuuli, claiming to represent the Fanene Family, filed their petition as such representatives seeking an order evicting defendant Sesera Brown from "communal land of the Fanene Family known as Malaeimi" lying across the highway from the old Navy Cemetery near Mapusaga.

During the course of the hearing it developed that there was considerable opposition in the Fanene Family to the institution of this proceeding against Sesera. The question then arose as to whether the 19 plaintiffs who have labelled themselves "Representatives of the Fanene Family" really represented it.

Fanene Penilosa, the matai of the Fanene Family, testified that he thought that in the Fanene title case (No. 17-1951; H.C. of Am. S.) over 300 family members supported his candidacy for the Fanene title and he further testified that all the signers on his petition in that case were members of the Family. A check of the petition for Penilosa filed in the record of that case showed that there were 273

names on it. Fuamata, a member of the Fanene Family, testified as follows:

"Q  How did you know that the three-fourths of the family favor Sesera to live on the land and the quarter wanted his removal?

As I have said our family is over 200 people and the people signing, supporting the petition is only 19. Let me take 50 names of our family, it doesn't even consist one-fourth of the family in the petition.

Q  How many of the Fanene family members do you really know and how many of those family members consist of three-quarters and the number that consist of a quarter?

A  The Fanene Family members in the trial of the title of Fanene those who supported Touli amounts to 21 people; supporting Penilosa 300 people; supporting Pasene in that case 280 people. Those are the people of Fanene Family.

Q  Are you related to Sesera?

A  No."

It appears to us that the 19 persons claiming to represent the Family constitute only a very small minority of it.

■ There was nothing in the evidence to indicate that the other members of the Family authorized the 19 to represent them. We conclude from the evidence that the 19 are representing themselves only and that they are not representing the great majority of the Family. We believe from the evidence that the great majority of the Family are opposed to this proceeding.

■ It is to be remembered that communal family land in American Samoa is owned by the family as such. It is not a case of tenancy in common with each of the individual members of the family having an undivided interest in communal family lands. If the situation were the latter, when a member died his share would be inherited by his heirs, or in case of a will, go to his devisees. Such is not the case under Samoan customs. Under Samoan customs the matai upon the death of a member of the family assigns the communal land which was occupied and used by such de-

262

ceased member to another member of the family. While individual members of the family (clan) may die, the family (clan) which owns the land does not die. These 19 cannot maintain this action as tenants in common of Malaeimi for they are not tenants in common.

■ We think, in view of Samoan customs as to the ownership of land, that at least a majority of the family must favor the maintenance of a proceeding like that involved in the present case; otherwise it cannot be maintained. In this case it appears to us that only a small minority of the family are in favor of this proceeding against Sesera and that the majority of the family oppose it. The great majority of the family did not authorize this proceeding either personally or by representation. Under these circumstances the petition must be dismissed.

In 1946 Sesera leased the land involved from the Fanene Family for four years. He has continued to occupy it ever since the lease expired in 1950, at the same time rendering service to the Fanene title in accordance with Samoan customs. It seems that a small part of the Family has wanted to get Sesera off the land at various times since the lease expired, but that most of the Family did not. The majority looked forward to a new lease from Sesera. During Sesera's occupation of the land (it comprises about 64 acres) he has planted about 3,000 coconut and about 2,000 cocoa trees on the property. No one raised any objection to his planting coconuts or cocoa.

Coconuts and cocoa are known as permanent crops in Samoa, and the 19 fear that Sesera may be claiming the land as his own property and secure title to it by adverse possession.

■ However, we think their fears are groundless. In order to acquire title to land by adverse possession for 20 years, the possession must, among other things, have been hostile. "The possession that will give an occupant title as

against the true owner must be hostile." 2 C.J.S., Tit. Adverse Possession, Sec. 53 at p. 568. And "A possession is hostile where it is with intent to dispossess the owner, and it has been said that to be hostile the possession must be with intent to claim and hold the land against the true owner and the whole world, . . ." 2 C.J.S., Tit. Adverse Possession, Sec. 54 at p. 570. "Possession without hostility affords no basis for title by adverse possession however long continued, or exclusive in character, and possession consistent with the real owner's title cannot be regarded as adverse. Thus a possession is not adverse where under license or permission of the owner, as explained in Sec. 80, or where it is in recognition of the title of another, as set forth in Sec. 81." 2 C.J.S., Tit. Adverse Possession, Sec. 53 at p. 570.

It is very clear from Sesera's own testimony that his possession is not hostile or adverse. He does not claim that the land occupied by him is his. He admits that is Fanene land. He testified in part as follows:

"Q You admit that this land is Fanene land that is Malaeimi and the land which you have overlapped which is adjacent to Malaeimi?

A That is my belief.

Q You don't claim to own it,—strike that. You don't claim to own it that is Malaeimi?

A No.

Q Have you always understood that it was Fanene land?

A Yes.

Q You have always understood that you were in there by permission, that is in possession of Malaeimi and the overlap?

A Yes."

Furthermore, if any members of the Fanene Family fear that Sesera may get title to their land Malaeimi and the overlap, the matai may file the Family's claim to such land in the High Court of American Samoa and prevent the running of the statute of limitations. Sec. 907(2) of the A. S. Code provides that:

264

"Any person claiming title to land in the occupation of another person may state in writing such claim and file the same in the High Court of American Samoa; and such claim, when filed, shall be deemed an arrest of the running of the statutory period governing acquisition of title by adverse possession; which period shall be 20 years."

Our decision in this case is based upon our finding that the 19 do not represent the Fanene Family but only themselves and that they constitute only a small minority of the Family. What we have said about adverse possession is not necessary to a decision and is of course dicta. However, we think that under the present conditions existing in American Samoa, we should nevertheless include in our opinion the matter relative to adverse possession.

### ORDER

It is ORDERED that the petition filed by the plaintiffs in this case be and the same is hereby dismissed.

Costs in the sum of $25.00 are hereby assessed against Fanene Penilosa, the same to be paid within 30 days.